IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LAI NGOC THACH,

    Petitioner,

v.

MARK NOOTH,

    Respondent.

Case No. 2:16-cv-00659-JO

OPINION AND ORDER

Kristina Hellman
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204

    Attorney for Petitioner

Ellen F. Rosenblum, Attorney General
Nick M. Kallstrom, Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97310

    Attorneys for Respondent

JONES, District Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 challenging the legality of his state-court conviction for Murder. For the reasons that follow, the Petition for Writ of Habeas Corpus (#2) is denied.

## BACKGROUND

In December 2006, a large bar fight broke out at the Wetlands Public House in Portland. Petitioner's sister, Son Thach, had been at the center of the fight at its outset, and when the bar fight began to calm down, she began throwing pool balls which extended the fighting. As a result, the victim in this case, Robert Pfeifer, put Son Thach in a bear hug, took her away from the pool table, and released her. This angered Petitioner, and he began fighting with Pfeifer. Pfeifer was prevailing in the physical altercation, and several eyewitnesses saw Petitioner pull out a handgun and shoot Pfeifer in the throat. The shot, occurring at point-blank range, killed Pfeifer instantly.

The Multnomah County Grand Jury indicted Petitioner on one count of Murder with a Firearm, and the case proceeded to a jury trial. The defense called Son Thach to testify on Petitioner's behalf. The prosecutor advised her that she had a right not to testify, she could also consult with an attorney prior to her testimony, and that anything she said could be used against her. When the prosecutor informed her that an attorney could be provided free of charge, Son Thach asked him whether she was going to be arrested. The prosecutor responded that it depended

on the content of her testimony. Son Thach asked to speak with an attorney, and ultimately elected to exercise her Fifth Amendment right against self-incrimination and did not testify.

One of the witnesses to Pfeifer's murder was Leslie Hatch, a bouncer at the Wetlands Public House. His testimony at trial was somewhat different from other eyewitnesses insofar as he claimed that Petitioner had pointed the gun directly at him and had intended to shoot him, not Pfeifer. Hatch testified that he grabbed Petitioner's arm, causing movement so that when the gun went off, the shot hit Pfeifer. Hatch's testimony prompted the prosecutor to ask the court for an instruction on transferred intent. The court agreed, instructed the jury on transferred intent that same day, and the jury unanimously convicted Petitioner of the charged offense. As a result, the trial court sentenced him to life imprisonment with a 25-year minimum sentence.

Petitioner took a direct appeal raising claims that are not at issue in this habeas corpus case. The Oregon Court of Appeals affirmed the trial court's decision without opinion, and the Oregon Supreme Court denied review. *State v. Thach*, 238 Or. App. 758, 246 P.3d 101 (2010), *rev. denied*, 350 Or. 230, 253 P.3d 1079 (2011).

Petitioner next filed for post-conviction relief ("PCR") in Malheur County. Relevant to this case, he alleged that his trial attorney was ineffective for failing to: (1) object when the prosecutor intimated Son Thach into not testifying; (2) argue that the shooting was reckless or negligent; and (3) object to

the transferred intent instruction on the basis that it effectively amended the Indictment. Respondent's Exhibit 109. Following a hearing, the PCR court denied relief on all claims. Respondent's Exhibit 143. The Oregon Court of Appeals affirmed that decision without issuing a written opinion, and the Oregon Supreme Court denied review. *Thach v. Nooth*, 267 Or. App. 423, 341 P.3d 252 (2014), *rev. denied*, 356 Or. 837, 346 P.3d 496 (2015).

Petitioner filed this this federal habeas corpus case on April 18, 2016, and the Court counsel to represent him. With the assistance of counsel, Petitioner argues three of the claims from his *pro se* Petition. Respondent asks the Court to deny relief on those claims because the PCR court denied them in a decision that reasonably applied federal law.

## DISCUSSION

### I. Standard of Review

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts

that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id* at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id* at 410. Twenty-eight U.S.C. § 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents. It goes no farther." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Twenty-eight U.S.C. § 2254(d)(2) allows a petitioner to "challenge the substance of the state court's findings and attempt to show that those findings were not supported by substantial evidence in the state court record." *Hibbler v. Benedetti*, 693 F.3d 1140, 1146 (9th Cir. 2012). A federal habeas court cannot overturn a state court decision on factual grounds "unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). This is a "'daunting standard—one that will be satisfied in relatively few cases,' especially because we must be 'particularly deferential to our state-court

colleagues.'" *Hernandez v. Holland*, 750 F.3d 843, 857 (9th Cir. 2014) (quoting *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004)).

## II. Unargued Claims

With the assistance of counsel, Petitioner chooses to argue three of the claims he presented in his *pro se* Petition. Specifically, Petitioner argues that trial counsel was ineffective when he failed to: (1) investigate and present expert testimony in support of a mental health defense (Ground 2.3); (2) object to the prosecutor's interference with Son Thach's testimony (Ground 2.2); and (3) object on federal constitutional grounds to the transferred intent jury instruction which constructively amended the Indictment and deprived Petitioner of notice of the charges against him (Ground 2.5).

With respect to the remainder of his claims, Petitioner relies upon the record and does not address any of Respondent's arguments as to why relief on these claims should be denied. Petitioner has not carried his burden of proof with respect to these unargued claims. *See Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (Petitioner bears the burden of proving his claims). Even if Petitioner had briefed the merits of these claims, the Court has examined them based upon the existing record and determined that they do not entitle him to relief.

## III. Mental Health Defense (Ground 2.3)

Petitioner's primary defense at trial was that he lacked the intent required to be convicted of intentional murder. The defense hired Dr. Frank Colistro to conduct a psychological

evaluation of Petitioner. Dr. Colistro concluded (based upon the history as recounted to him by Petitioner) that Petitioner suffered from severe alcohol dependency and was inebriated on the night of the shooting. Dr. Colistro also concluded that Petitioner's shooting of Pfeifer "was reckless and negligent rather than deliberate and intentional." Respondent's Exhibit 127, p. 7.

In this proceeding, Petitioner does not argue that counsel should have called Dr. Colistro to testify that the killing involved reckless and negligent conduct. Instead, Petitioner believes Dr. Colistro could have testified to his diagnosis of severe alcohol dependency as well as his opinion that Petitioner was intoxicated on the night in question such that the jury could have used that information to conclude that Petitioner did not intend to murder Pfeifer.

The Court uses the general two-part test established by the Supreme Court to determine whether Petitioner received ineffective assistance of counsel. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). First, Petitioner must show that his counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." *Id* at 689.

Second, Petitioner must show that his counsel's performance prejudiced the defense. The appropriate test for prejudice is

whether Petitioner can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694. A reasonable probability is one which is sufficient to undermine confidence in the outcome of the trial. *Id* at 696. When *Strickland's* general standard is combined with the standard of review governing 28 U.S.C. § 2254 habeas corpus cases, the result is a "doubly deferential judicial review." *Mirzayance*, 556 U.S. at 122.

As an initial matter, although Petitioner believes that the PCR court did not comprehend the nature of his claim, he did not present the claim he argues here to the PCR court. Petitioner argues that his intoxication and severe alcohol dependence prevented him from forming intent to commit intentional murder, and that Dr. Colistro could have testified about these alcohol-related issues. Petitioner presented no such claim in his PCR proceedings. Instead, he argued that Dr. Colistro's report was favorable to the defense because it concluded that Petitioner's conduct was reckless and negligent. Respondent's Exhibit 110, p. 27. At no time did Petitioner argue the intoxication and alcohol dependence issues he now argues in this Court. In this respect, Petitioner failed to fairly present the claim he argues as Ground 2.3 to Oregon's state courts and provide those courts with a fair opportunity to pass on the merits of the claim. *See Rose v. Lundy*, 455 U.S. 509, 519 (1982) (requiring fair presentation of claim to state courts). Because Petitioner can no longer present the claim in Oregon's state courts, the claim is

whether Petitioner can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694. A reasonable probability is one which is sufficient to undermine confidence in the outcome of the trial. *Id* at 696. When *Strickland's* general standard is combined with the standard of review governing 28 U.S.C. § 2254 habeas corpus cases, the result is a "doubly deferential judicial review." *Mirzayance*, 556 U.S. at 122.

As an initial matter, although Petitioner believes that the PCR court did not comprehend the nature of his claim, he did not present the claim he argues here to the PCR court. Petitioner argues that his intoxication and severe alcohol dependence prevented him from forming intent to commit intentional murder, and that Dr. Colistro could have testified about these alcohol-related issues. Petitioner presented no such claim in his PCR proceedings. Instead, he argued that Dr. Colistro's report was favorable to the defense because it concluded that Petitioner's conduct was reckless and negligent. Respondent's Exhibit 110, p. 27. At no time did Petitioner argue the intoxication and alcohol dependence issues he now argues in this Court. In this respect, Petitioner failed to fairly present the claim he argues as Ground 2.3 to Oregon's state courts and provide those courts with a fair opportunity to pass on the merits of the claim. *See Rose v. Lundy*, 455 U.S. 509, 519 (1982) (requiring fair presentation of claim to state courts). Because Petitioner can no longer present the claim in Oregon's state courts, the claim is

whether Petitioner can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694. A reasonable probability is one which is sufficient to undermine confidence in the outcome of the trial. *Id* at 696. When *Strickland's* general standard is combined with the standard of review governing 28 U.S.C. § 2254 habeas corpus cases, the result is a "doubly deferential judicial review." *Mirzayance*, 556 U.S. at 122.

As an initial matter, although Petitioner believes that the PCR court did not comprehend the nature of his claim, he did not present the claim he argues here to the PCR court. Petitioner argues that his intoxication and severe alcohol dependence prevented him from forming intent to commit intentional murder, and that Dr. Colistro could have testified about these alcohol-related issues. Petitioner presented no such claim in his PCR proceedings. Instead, he argued that Dr. Colistro's report was favorable to the defense because it concluded that Petitioner's conduct was reckless and negligent. Respondent's Exhibit 110, p. 27. At no time did Petitioner argue the intoxication and alcohol dependence issues he now argues in this Court. In this respect, Petitioner failed to fairly present the claim he argues as Ground 2.3 to Oregon's state courts and provide those courts with a fair opportunity to pass on the merits of the claim. *See Rose v. Lundy*, 455 U.S. 509, 519 (1982) (requiring fair presentation of claim to state courts). Because Petitioner can no longer present the claim in Oregon's state courts, the claim is

procedurally defaulted, and Petitioner has not excused the default. The argued claim is therefore not properly before this Court for adjudication.[1]

As to the preserved claim that Petitioner did fairly present to Oregon's state courts, the PCR court determined that Dr. Colistro's conclusions on the legal issue of intent would not have been admissible in state court. Respondent's Exhibit 143, p. 3. Such a state-law determination is binding on a federal habeas court. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[W]e reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

Even if Petitioner had pled and fairly presented his argued Ground 2.3 claim, he would not be entitled to relief. As he recognizes, Dr. Colistro had a conflict of interest because he was treating Hatch for the emotional trauma that ensued from the shooting. This conflict prompted Dr. Colistro to withdraw from the case, thus he was not available to testify. Respondent's Exhibit 139, p. 2. Although Petitioner asserts that any competent psychologist could have provided similar testimony, he offered the PCR court no evidence as to the identity of such a psychologist, whether (s)he would have been available to testify,

---

[1] Respondent argues that this claim is also not contained within the Petition for Writ of Habeas Corpus, and is therefore not properly before this Court for consideration. *See* Rule 2(c), Rules Governing Section 2254 Proceedings, 28 U.S.C. foll. § 2254 (requiring each habeas petition to "specify all the grounds for relief which are available to the petitioner"); *Greene v. Henry*, 302 F.3d 1067, 1070 fn 3 (9th Cir. 2002) (a court need not consider claims not raised in the petition). Where it is evident that the claim is unpreserved, the Court need not resolve this issue.

and what the content of the testimony would have been. *See Horn v. Hill*, 180 Or. App. 139, 148-49, 41 P.3d 1127 (2002) ("Where evidence omitted from a criminal trial is not produced in a post-conviction proceeding . . . its omission cannot be prejudicial"). For all of these reasons, Petitioner is not entitled to relief on this claim.

IV. **Ground 2.2: Son Thach's Testimony**

During Petitioner's defense, he sought to call his sister, Son Thach, to testify on his behalf. The trial court informed her that the prosecutor had a matter he wished to discuss with her before the defense proceeded with her testimony. The prosecutor ensured Son Thach knew that she was under no obligation to testify, that she had the right to remain silent, had the right to an attorney, and that anything she said on the stand could be used against her. Trial Transcript, pp. 1005-06. He then asked her whether, knowing those rights, she wished to proceed. Son Thach responded in the affirmative. *Id* at 1006.

At that point, defense counsel informed Son Thach that he was representing her brother, not her, and established that he had not given her any legal advice and had informed her that she had the right to consult an attorney of her choice before coming to court to testify. *Id*. At that point, the prosecutor indicated that he had forgotten to cover one item and the following transpired:

> DA: You know if you want an attorney to consult with prior to your testimony, that one could be appointed to you at no charge?

> ST: Am I going to get arrested or -
>
> DA: That depends on what your testimony will be.
>
> ST: I don't know.
>
> Court: In other words, not only do you have the right to have an attorney and to talk to an attorney before you testify or decide whether to testify today, but if you can't afford to hire an attorney, I will appoint one for you at no cost to you.
>
> ST: Okay. I think I want to talk to an attorney first before I talk.
>
> Court: I'll talk to indigent defense and see if they can get somebody here. You can step down.

*Id* at 1007. Son Thach consulted with counsel and elected to exercise her Fifth Amendment right not to testify.

Petitioner argues that based upon the contents of the transcript, the prosecutor substantially and improperly interfered with Son Thach's decision. The PCR court disagreed, and concluded that the "discussion about Son's right to remain silent and possible consequences if she testified was conducted before the trial judge and was done on the record. The record does not reflect intimidation but rather an advice of rights. She made her choice not to testify after she consulted with an attorney." Respondent's Exhibit 143, p. 2.

It was Son Thach who introduced the idea of arrest when the prosecutor was attempting to inform her that if she wished to consult with an attorney but could not afford one, the court could provide an attorney free of charge. Her question about the possibility of arrest put the prosecutor in a difficult position

11 - OPINION AND ORDER

because he could neither assure that she would not be arrested, nor could he suggest that she would, indeed, be arrested no matter the content of her testimony.[2] In this regard, his response was a reasonable one occasioned by the question asked, and the PCR court correctly determined that there was no intimidation. Counsel was therefore under no duty to object, and his performance did not fall below an objective standard of reasonableness. The PCR court reasonably resolved this claim.

## V. Ground 2.5: Transferred Intent Jury Instruction

At the close of trial, the prosecutor asked the judge to instruct the jury on the issue of transferred intent based upon Hatch's testimony that Petitioner had actually intended to kill him, causing Hatch to grab Petitioner's arm and affect the direction of the shot. Trial counsel objected:

> First of all, your Honor, the State's theory of the case has never been that. They have maintained from the opening statement that Mr. Thach was alone when he shot the gun, and he shot with intent right at Robby Pfeifer, that's been their theory. This is brand new, not supported by the facts and the evidence as it stands right now. It is potentially a comment on the evidence, it is a way for [the prosecutor] to possibly save face just in case they don't think Mr. Thach had the intent to kill Mr. Pfeifer.
>
> Now they are saying, well maybe he had the intent to kill [Hatch] and the gun did go his way, but otherwise there's no other evidence to support this. And there's no evidence that anyone said Mr. Lai Thach had any kind of

---

[2] The prosecutor issued notifications of the same general rights to a subsequent witness, Heather Zimmerman, who opted to testify without speaking to counsel. Trial Transcript, pp. 1008-09. Where Zimmerman did not raise the issue of arrest, the prosecutor made no reference to any such possibility.

> intent. There were no questions even asked
> about it, what intent he might have had
> towards Leslie Hatch.

Trial Transcript, pp. 1068-69. Defense counsel also informed the Court that Hatch "was witness number two for the State. The first witness . . . was very brief, didn't really see anything. That was Tuesday. And here they are trying to surprise us." *Id* at 1071. As noted in the Background of this Opinion, the trial court overruled the objection and issued the instruction.

Petitioner asserts that due process guarantees adequate notice of the charges against a criminal defendant, and that the trial court improperly allowed the prosecutor to constructively amend the Indictment on the day the jury was instructed. He points out that the Indictment charged him with the intentional murder of Pfeifer, thus he defended against that specific charge only to have the trial court instruct the jury on transferred intent after all the evidence had been presented. He specifically faults trial counsel for not raising an objection based upon the Due Process Clause.

The PCR court specifically determined that counsel did, in fact, object to the instruction as a constructive amendment to the Indictment, and it also concluded as a matter of state law that the objection preserved the issue for appellate review:

> Petitioner has failed to prove that his trial
> attorney was ineffective for failing to
> object to the instruction regarding transfer
> of intent. He did in fact object to the
> instruction although he acknowledged that it
> was a correct statement of the law. He argued
> that it was too late in the trial to raise
> such an issue and that it constituted an
> amendment to the indictment. Those issues

>were preserved for appeal and were raised on appeal. There was no basis to object to the instruction as an improper statement of the law because id did in fact state the law correctly.

Respondent's Exhibit 143, p. 4.

Petitioner's claim that counsel failed to lodge an objection to the transferred intent jury instruction based upon insufficient notice is belied by the record. Counsel specifically argued that this was a brand-new theory being argued on the day the case went to the jury, and that the State was trying to surprise the defense. Even if counsel had not raised the objection, the Supreme Court has specifically stated that "[i]t is doubtful whether this principle of fair notice has any application to a case of transferred intent[.]" Bradshaw v. Richey, 546 U.S. 74, 76-77 (2005); see also U.S. v. Montoya, 739 F.2d 1437, 1438 (9th Cir. 1984) (rejecting argument that transferred intent instruction deprived defendant of notice of the precise nature of the charge against him). For these reasons, the PCR court's decision did not involve an unreasonable determination of the facts in light of the record, nor did it involve an unreasonable application of clearly established federal law.[3]

## CONCLUSION

For the reasons identified above, the Petition for Writ of Habeas Corpus (#2) is denied. The Court declines to issue a

---

[3] Where Petitioner's claim fails on its merits, the Court need not address Respondent's arguments that Petitioner procedurally defaulted this claim in state court, and omitted it from his Petition for Writ of Habeas Corpus. See 28 U.S.C. § 2254(b)(2).

Certificate of Appealability on the basis that petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this 1st day of July, 2019.

                                          Robert E. Jones
                                          United States District Judge